IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JOLYNN L. PRIMMER,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C11-2002

RULING ON JUDICIAL REVIEW

---

**TABLE OF CONTENTS**

I.     *INTRODUCTION* ........................................ 2

II.    *PROCEDURAL BACKGROUND* ............................. 2

III.   *MOTION TO REMAND* .................................. 3

IV.    *PRINCIPLES OF REVIEW* .............................. 6

V.     *FACTS* ............................................. 8
       A.    *Primmer's Education and Employment Background* ........... 8
       B.    *Administrative Hearing Testimony* ..................... 8
             1.    *Primmer's Testimony* ........................ 8
             2.    *Vocational Expert Testimony* ................. 10
       C.    *Primmer's Medical History* ......................... 11

VI.    *CONCLUSIONS OF LAW* ............................... 19
       A.    *ALJ's Disability Determination* ..................... 19
       B.    *Objections Raised By Claimant* ...................... 21
             1.    *Dr. Kettman's Opinions* ...................... 21
             2.    *Credibility Determination* ................... 24
       C.    *Reversal or Remand* ............................... 27

VII.   *CONCLUSION* ....................................... 28

VIII.  *ORDER* ............................................ 28

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jolynn L. Primmer on January 18, 2011, and the Motion to Remand for New and Additional Evidence (docket number 16) filed by Primmer on October 26, 2011.  In her complaint, Primmer seeks judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.  Primmer asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits.  In the alternative, Primmer requests the Court to remand this matter for further proceedings.  In her motion to remand, Primmer requests that "[i]f the Court cannot reverse the decision of the [administrative law judge] based upon the existing record, this matter should be remanded to allow the Commissioner to review the new evidence[,]" pursuant to sentence six of 42 U.S.C. § 405(g).[1]

## II. PROCEDURAL BACKGROUND

On May 2, 2006, Primmer applied for both disability insurance benefits and SSI benefits.  In her applications, Primmer alleged an inability to work since September 30, 2005 due to fibromyalgia, Raynaud's syndrome, and sarcoidosis.  Primmer's applications were denied on September 20, 2006.  On December 27, 2006, her applications were denied on reconsideration.  On February 15, 2007, Primmer requested an administrative hearing before an Administrative Law Judge ("ALJ").  On October 7, 2008, Primmer appeared via video conference with her attorney before ALJ Thomas M. Donahue for an administrative hearing.  Primmer and vocational expert Carma Mitchell testified at the hearing.  In a decision dated January 22, 2009, The ALJ determined that Primmer was not disabled and not entitled to disability insurance benefits or SSI benefits because she was

---

[1] *See* Primmer's Motion to Remand for New and Additional Evidence (docket number 16) at 2; ¶ 6.

functionally capable of performing other work that exists in significant numbers in the national economy. Primmer appealed the ALJ's decision. On November 15, 2010, the Appeals Council denied Primmer's request for review. Consequently, the ALJ's January 22, 2009 decision was adopted as the Commissioner's final decision.

On January 18, 2011, Primmer filed this action for judicial review. The Commissioner filed an Answer on July 1, 2011. On August 5, 2011, Primmer filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On September 30, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 26, 2011, Primmer filed her motion to remand. The Commissioner filed a response on November 3, 2011. On April 27, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  MOTION TO REMAND

Before considering Primmer's request for judicial review of the ALJ's denial of disability insurance benefits and SSI benefits, the Court will first address Primmer's motion for remand under sentence six of 42 U.S.C. § 405(g). Sentence six of 42 U.S.C. § 405(g) provides in pertinent part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.] . . .

*Id.* A sentence six remand is authorized in only two limited situations: "(1) where the Commissioner requests a remand before answering the complaint seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings." *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (citations omitted). Unlike a sentence four remand which "terminates the court's jurisdiction," a "remand under sentence six does not. *Travis v. Astrue*, 477 F.3d 1037, 1039 (8th Cir. 2007) (citation omitted). "Under sentence six, 'the district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination.'" *Id.* at 1039-40 (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)).

Here, the Court is presented with situation two. Following the denial of the applications under review in the instant action, Primmer filed new applications for disability insurance benefits and SSI benefits on April 27, 2009. On July 13, 2011, ALJ Jo Ann L. Draper found Primmer disabled and entitled to benefits since January 22, 2009. *See* docket number 14 (July 2011 ALJ decision). In her motion, Primmer points out that in her judicial review brief (docket number 12), she argues that the ALJ erred in denying her benefits by discounting her subjective allegations. Primmer further points out that in the 2011 decision which granted benefits, ALJ Draper determined that her subjective allegations were credible. Primmer concludes that "[t]he subsequent ALJ's decision is new and material evidence supporting Ms. Primmer's credibility."[2] Thus, Primmer requests that "[i]f the Court cannot reverse the decision of the ALJ based on the existing record, this matter should be remanded to allow the Commissioner to review the new evidence, including the subsequent claim file."[3]

---

[2] *See* Motion to Remand (docket number 16) at 1; ¶ 5.

[3] *Id.* at 2; ¶ 6.

In response to Primmer's motion, the Commissioner concedes that the July 2011 decision is "new" evidence that was not in existence at the time of the January 2009 decision, but asserts that the 2011 decision "is not relevant to the ALJ's decision in the instant claim."[4] Specifically, the Commissioner argues that:

> The relevant time period for consideration of [Primmer's] claim before the Court is from September 30, 2005, the date of alleged disability onset, through January 22, 2009, the date of the ALJ decision. . . . The ALJ decision in July 2011, is considered additional evidence relating to the time period from January 22, 2009, through July 2011, which is not relevant to the instant claim.

See Commissioner's Response to Plaintiff's Motion to Remand (docket number 17) at 2. The Commissioner insists that the mere fact that a different ALJ found Primmer's subjective allegations to be credible on different facts and for a different time period, "has no relevance on whether the findings by the ALJ in January 2009 are based on substantial evidence in the record as a whole before the ALJ at that time."[5] The Commissioner also argues that in the 2011 decision, ALJ Draper limited her decision to the time period of January 22, 2009 through July 13, 2011. Specifically, the 2011 decision states:

> The claimant is alleging disability since January 22, 2009. The undersigned does not find a basis for reopening the claimant's prior Title II application or Title XVI application. . . . Accordingly, the previous determinations are final and binding. A review of medical history does not amount to the reconsideration 'on the merits' necessary to constitute a de facto reopening of the earlier application. These matters are limited to the purpose of providing a foundation to consider whether the claimant was disabled at the time of the subsequent application and such discussion is not an implied reopening.

---

[4] See Commissioner's Response to Plaintiff's Motion to Remand (docket number 17) at 2.

[5] Id.

*See* docket number 14 (July 2011 ALJ decision) at 5. The Commissioner concludes that the 2011 decision is not new and material evidence warranting a remand under sentence six of 42 U.S.C. § 405(g).

The Court agrees with the Commissioner and finds that the 2011 decision, while technically "new" evidence, is not material to the disability determination found in the 2009 decision, and does not warrant remand. *See Buckner*, 213 F.3d at 1010. Significantly, the ALJ in the 2011 decision specifically determined that the findings of the 2009 decision were "final and binding." The ALJ denied the reopening of Primmer's prior applications for disability benefits, and limited her decision to the time period associated with Primmer's subsequent applications for disability benefits, January 22, 2009 through July 13, 2011. Because the 2009 decision focuses on Primmer's disability status for the time period of September 30, 2005 through January 22, 2009, and the 2011 decision does not consider that time period, the Court concludes that the 2011 decision is irrelevant to the findings of the 2009 decision. Accordingly, Primmer's motion to remand is denied.

## IV. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in

the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## V. FACTS

### A. Primmer's Education and Employment Background

Primmer was born in 1970. She is a high school graduate. A detailed earnings report for Primmer is contained in the record. The report covers Primmer's employment history from 1985 to 2007. From 1986 to 1991, Primmer earned between $184.88 (1987) and $7,288.91 (1988). She had no earnings in 1992 and 1993. Between 1994 and 2005, Primmer earned between $1,554.00 (1997) and $21,546.11 (2000). She had no earnings in 2006. In 2007, she earned $1,109.00.

### B. Administrative Hearing Testimony

### 1. Primmer's Testimony

At the administrative hearing, the ALJ asked Primmer to explain why she is no longer employed. Primmer stated that she was terminated from her last job due to her "illness because I couldn't go back to work. They wanted me there on a -- by Friday. My doctor wouldn't release me. I wasn't ready to go back."[6] Specifically, Primmer testified that her difficulties with Raynaud's and fibromyalgia caused severe fatigue, hand pain, foot

---

[6] *See* Administrative Record at 483.

pain, and body aches.   The ALJ also asked Primmer to describe her typical day. According to Primmer, she gets up in the morning with her son, takes a bath, walks to the mailbox, and then "putts around trying to get something done."[7]   Lastly, the ALJ inquired about Primmer's prognosis:

Q:   What are the doctors telling you about your future?
A:   My doctor said that he wouldn't want to hire me if he was -- you know, just because of my illnesses.  I would miss -- I'm not -- what do you want to call it -- reliable, dependable.
Q:   How does Raynaud's affect you?
A:   It affects the circulation in my hands and feet.  I have a hard time writing.  I can't type.  My arms -- and then I do -- bad, bad days I can't even hold a pen or try to fill out a check if I wanted to.

(Administrative Record at 485.)

Primmer's attorney also questioned Primmer regarding her difficulties with Raynaud's, and asked her to describe her ability to use her hands:

Q:   You mentioned that it affects your ability to use your hand and pick up things.
A:   Yes.
Q:   Is it difficult to pick up, say, change off the table or a pen off the table, silverware?
A:   Yes, it's even difficult for me to flip a page in a book because of the -- I don't know if it's because I don't have the sensation in my finger tips, but my finger doesn't flip that page.  But I have a hard time lifting.

(Administrative Record at 489.)   Primmer's attorney also asked Primmer to rate her average fibromyalgia pain on a scale of zero (no pain) to ten (excruciating pain).  Primmer rated her pain at seven or eight.  Primmer testified that she takes pain medication about three times per day to keep her pain at a seven.  She also indicated that her most severe pain is generally in the area of her low back.  Primmer stated that her pain made it difficult

---

[7] *Id.* at 484.

to sit or do anything.  She further stated that she can't sit for more than 15 to 20 minutes at one time.  Lastly, Primmer's attorney asked Primmer about her ability to perform housework:

> Q:   Are you able to accomplish any housework at home?
> A:   No.  I do a load of laundry and then later I'll fold it. My kids help a lot.  They do the dishes, they carry the laundry up, they put their own stuff away.  They carry all the groceries, they go grocery shopping with me.
> Q:   Do they put the product in the cart?
> A:   Yeah.
> Q:   Do you push the car or do they push the cart?
> A:   They push the cart.

(Administrative Record at 496.)

### 2.    *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual with the following limitations:

> Lifting twenty pounds occasionally, ten pounds frequently, sitting and standing up to two hours at a time and each of those for six of an eight-hour day in both of those, walking three to four blocks, only occasional climbing of ramps and stairs, only occasional balancing, stooping, kneeling, crouching, crawling and bending, would need a low stress level such as four with ten being the most stressful and one being the least stressful, would be limited to simple, routine tasks, would require a job with a no contact with the general public and limited contact with fellow workers, would need to avoid concentrated exposure to extremes of cold, heat, wetness, humidity, no working at heights.

(Administrative Record at 501-502.)  The vocational expert testified that under such limitations, Primmer could not perform her past relevant work.  The vocational expert further testified that Primmer could perform the following work: (1) office helper (1,300 positions in Iowa and 156,000 positions in the nation), (2) collator (500 positions in Iowa and 52,500 positions in the nation), and (3) mail clerk jobs (600 positions in Iowa and 40,000 positions in Iowa).  The ALJ asked a second hypothetical which was identical to

the first hypothetical, except that the individual would need frequent unscheduled rest breaks due to chronic pain syndrome and depression, and would miss three or more days of work per month. The vocational expert testified that under such limitations, Primmer would be precluded from full-time competitive work.

Primmer's attorney also questioned the vocational expert. Primmer's attorney inquired whether an individual who was limited to using his or her hands for only 10 percent of an eight-hour workday, and who had to work at a slow pace for up to one-third of the workday, could find employment. The vocational expert testified that under such limitations, Primmer could not be competitively employed.

### C. Primmer's Medical History

On September 22, 2004, Primmer met with Dr. Matthew J. Kettman, M.D., regarding a recent diagnosis of fibromyalgia and Raynaud's syndrome. Dr. Kettman noted that Primmer suffers from neck, back, arm, and leg pain. Dr. Kettman treated her with medication. Primmer had a follow-up appointment with Dr. Kettman on October 22, 2004. She continued to complain about fibromyalgia symptoms, but indicated that her energy was "pretty good." She also stated that she was exercising and sleeping better. Primmer also indicated that she was having difficulties with depression. Again, Dr. Kettman treated her with medication. Primmer next saw Dr. Kettman on December 29, 2004. Dr. Kettman noted that Primmer's Raynaud's was getting worse. Dr. Kettman also noted that she continued to have joint pain and muscle aches. Dr. Kettman found that Primmer had no depression symptoms and her overall fibromyalgia was doing "fairly well." Dr. Kettman treated her with medication.

Primmer returned to Dr. Kettman on October 11, 2005. Dr. Kettman reviewed her medical history and noted that:

> She feels happier. She is not as depressed as she was. Sleep is better. She is still having bilateral leg and arm pain of unknown etiology. . . . The conclusion was fibromyalgia. She got depressed and started to have recurrence of some of

> these symptoms. . . . She wants to go back to work but doesn't feel she can go yet.

(Administrative Record at 191.)  Dr. Kettman diagnosed Primmer with depression, fibromyalgia, and Raynaud's syndrome.  Dr. Kettman treated Primmer with medication. Primmer met with Dr. Kettman again on November 1, 2005.  Dr. Kettman noted that Primmer suffered from bilateral hand, neck, hip, and back pain.  Dr. Kettman also noted that she was being treated for depression.  Dr. Kettman also found Primmer's Raynaud's syndrome was getting worse.  Upon examination, Dr. Kettman diagnosed Primmer with fibromyalgia and depression.

On April 24, 2006, Primmer visited Dr. Kettman complaining about fibromyalgia problems.  Dr. Kettman noted that Primmer was not depressed, but suffered from headaches, and had neck, hip, leg, and back pain.  Dr. Kettman also found that Primmer's "hands are weak, hurt, and throb with stinging shooting pains bilaterally."[8]  Dr. Kettman diagnosed Primmer with fibromyalgia and Raynaud's syndrome.  On May 11, 2006, Primmer met with Dr. Kettman and he found that she was "not doing that well." Specifically, Dr. Kettman found that Primmer had "[b]ilateral hand pain.  Sometimes her hands hurt so much that she drops things.  She does feel depressed. . . . She has painful lumps on her back."[9]  Upon examination, Dr. Kettman diagnosed Primmer with hand pain, numbness and tingling, possibly Raynaud's, myalgias, fatigue likely caused by fibromyalgia, and depression.  Dr. Kettman treated Primmer with medication, and concluded that "I really don't have answers, and I am not sure that I am helping her.  I want to make sure we are not missing something."[10]

---

[8] *See* Administrative Record at 195.

[9] *Id.* at 199.

[10] *Id.* at 200.

On July 11, 2006, Primmer underwent a consultative examination performed by Dr. Matthew J. Roes, D.C., M.D.  Dr. Roes reviewed Primmer's primary complaints as follows:

> [Primmer] states that she has pain that makes her feel like she has been run over by a car.  She says it is worse in her hips, back, and arms; however, she also has problems in her legs and hands to the point where she finds it hard to write and she is dropping things.  She also states that she cannot lift anything.  She states that the pain associated with the fibromyalgia started approximately 3 years ago as to what they thought was tennis elbow.  She also has Raynaud's phenomenon that has taken her to the ER on several occasions. Her hands actually turn purple and they are ice cold. [Primmer] also states that she has severe fatigue. . . .  [Her] overall comment states she just does not feel good chronically.

(Administrative Record at 216.)  Upon examination, Dr. Roes diagnosed Primmer with sarcoidosis, fibromyalgia, and Raynaud's syndrome.  Dr. Roes opined that it "is an extremely difficult diagnosis for me to do due to the fact that this fibromyalgia is only subjective in nature.  There are truly no objective findings that one is able to perform to tell if anybody truly has a disease or not."  Dr. Roes concluded that Primmer's functional limitations were as follows:

> [She] probably would have limitations as far as lifting and caring [sic].  She seems to be able to stand and move about in a normal fashion as well as walking; however, sitting for 8 hours a day would probably not benefit her in any sort of way. She probably would not be able to stoop, climb, kneel or crawl for any length of time.  Her ability to handle objects would be limited due to the fact that [she] is stating that she is dropping dishes, something that she would normally not have a problem with prior to her diagnosis of fibromyalgia.

(Administrative Record at 217.)

On August 2, 2006, Disability Determination Services ("DDS") referred Primmer to Dr. Paul M. Conditt, Psy.D., for a psychodiagnostic disability examination.  Upon

examination, Dr. Conditt found that Primmer's depression was in the mild range and stemmed from chronic pain and poor sleep. Specifically, Dr. Conditt noted that:

> She feels hopeless about her future. Her sleep is extremely interrupted by the pain from fibromyalgia and her energy level is extremely low. She is 'very irritable' and withdraws socially. 'I don't want to be around anybody.'

(Administrative Record at 219.) With regard to her mental status, Dr. Conditt found that Primmer's IQ was in the low average to borderline range. Dr. Conditt noted that "[r]ecent memory showed slight impairment, while remote memory was intact. Concentration is adequate and attention was available, but abstract thinking and reasoning showed deficits."[11] Dr. Conditt diagnosed Primmer with mild major depressive disorder and fibromyalgia. Dr. Conditt opined that Primmer's ability to carry out instructions and maintain concentration and pace was "severely" limited by fatigue and pain.

On August 11, 2006, Dr. Dee Wright, Ph.D., reviewed Primmer's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Primmer. On the Psychiatric Review Technique assessment, Dr. Wright diagnosed Primmer with major depressive disorder, evidenced by sleep disturbance, decreased energy, and difficulty concentrating or thinking. Dr. Wright determined that Primmer had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Primmer was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. Dr. Wright concluded that:

> The evidence in file would support some cognitive limitations of function in [Primmer's] case. [She] would have difficulty

---

[11] *See* Administrative Record at 220.

consistently performing very complex cognitive activity that demanded high levels of abstract reasoning; prolonged attention to minute details; and rapid shifts in alternating attention. Despite these restrictions, [Primmer] is currently able to sustain sufficient concentration and attention to perform noncomplex, repetitive, and routine cognitive activities without significant limitations of function. . . .

In summary, [Primmer's] diagnosed medically determinable mental impairment does create some limitations of function for [her]; but these limitations of function do not currently meet or equal 12.04 listing severity.

(Administrative Record at 224.)

On August 14, 2006, Primmer was referred to the Rheumatology Clinic at the University of Iowa Hospitals and Clinics ("UIHC") for evaluation. Dr. Craig T. Morita, M.D., reviewed Primmer's medical history:

Her symptoms began 3 years ago. She has chronic pain in her knees, lower back, cervical spine, shoulders, wrists, and hands. She reports pain daily, that is not worse at any point during the day but is constant. The severity waxes and wanes somewhat and occasionally reaches the point where she can not get out of bed. She was fired from her job after missing 2 weeks of work from pain and fatigue. She currently feels like she has 'been run over by a train. . . .' She also reports tingling and numbness of her hands and arms . . . that worsens with activity such as driving. She has bilateral hand weakness and has become clumsy often dropping things. Housework has become difficult and she reports breaking several dishes lately after dropping them. She has pain in low back and legs as well. . . . [Primmer] also has a history of Raynaud's. Her hands and feet are always cold and occasionally they turn red. She also says that her toes have turned bluish before and she gets bluish patches on the dorsal aspect of her hand. . . . She has trouble sleeping as well and takes trazodone nightly. She is under significant stress by loss of work and has three children. She has migraine headaches 2-3 times/month.

(Administrative Record at 243.) Upon examination, Dr. Morita diagnosed Primmer with Raynaud's phenomenon, fibromyalgia, mild bilateral carpal tunnel syndrome, and migraines. With regard to the Raynaud's, Dr. Morita opined that:

> Primmer has a history and exam consistent with secondary Raynaud's phenomenon. This may be due to an underlying autoimmune disorder as primary Raynaud's usually does not involve the feet and she had abnormal nailfold capillaries. . . . It is not clear what may be causing her Raynaud's. . . . [T]here is no clear etiology for her Raynaud's at present and her joint complaints are probably due primarily to fibromyalgia as there was no evidence for synovitis.

(Administrative Record at 244-245.) Dr. Morita treated Primmer with medication.

On September 1, 2006, Primmer returned to Dr. Kettman for a follow-up appointment. Dr. Kettman noted that doctors at the University of Iowa "confirmed" Primmer's diagnosis of Raynaud's and fibromyalgia. Dr. Kettman also noted that her fibromyalgia was "not better but not worse. . . . She walks at least once a day and tries to go a mile or 2. Energy is not that good."[12] Dr. Kettman continued to treat Primmer with medication.

On September 19, 2006, Dr. Laura Griffith, D.O., reviewed Primmer's medical records and provided DDS with a physical RFC for Primmer. Dr. Griffith determined that Primmer could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Primmer could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith further found that Primmer's fine manipulation was "limited to frequently." Lastly, Dr. Griffith opined that Primmer should avoid even moderate exposure to cold. Dr. Griffith found no visual or communicative limitations.

---

[12] *See* Administrative Record at 271.

On November 27, 2006, Dr. Sandra Davis, Ph.D., reviewed Primmer's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Primmer.   On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Primmer with major depressive disorder, evidenced by sleep disturbance, decreased energy, and difficulty concentrating or thinking. Dr. Davis determined that Primmer had the following limitations:  mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.   On the mental RFC assessment, Dr. Davis determined that Primmer was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting.   Dr. Davis concluded that Primmer's activities of daily living:

> include limitations primarily occasioned by her physical medical problems, but additionally impacted by depression. She does have some cognitive problems, particularly as tasks become more detailed and complex.   Attention and concentration will be variable, and pace has been described as slow.  She may have some difficulty responding to rapid or complex change.

(Administrative Record at 319.)

On March 30, 2007, Primmer returned to the Rheumatology Department at the UIHC for further evaluation.  Dr. Jacob Ijdo, M.D., noted that since her last visit in August 2006, Primmer's diffuse muscle aches had worsened.  She reported continued bilateral hand pain which, among other things, caused her to wake up multiple times at night and drop things easily.  Dr. Ijdo further noted that Primmer "has found it difficult

to do things such as housework and she is unable to do a lot of her usual activities."[13]
Upon examination, Dr. Ijdo diagnosed Primmer with fibromyalgia, bilateral hand pain, and Raynaud's.   Dr. Ijdo opined that with respect to Primmer's fibromyalgia, "she continues to have active disease and will benefit from medication to assist with improving sleep. Her hand pain has an unusual presentation and it is unclear if this is solely from her Raynaud's or if she may have a component of carpal tunnel syndrome."[14]   Dr. Ijdo recommended medication as treatment.

In April 2007, Dr. Kettman provided Primmer and her attorney with a letter summarizing her medical condition.  In the letter, Dr. Kettman stated:

> Under my care, Mrs. Primmer has had steady decline in her function. . . .  She is suffering depression. . . .  She also has very strange severe somatic complaints including bilateral hand pain, hand weakness, coldness, numbness and tingling, as well as several joint and musculoskeletal aches and pains including back, neck, and arms.  She is weak very often.  She does not sleep very well. . . .  She cannot handle the requirements of most jobs including handling simple things with her hand as they start to hurt.  Her hands are also very weak.  She could not perform hardly any physical behavior.  Sitting in one position becomes painful for her at times.  She also suffers from severe fatigue.
>
> Her workup thus far has been unremarkable and explained by fibromyalgia and Raynaud's.  However, [she] has had a few abnormalities, which may indicate underlying autoimmune process and with her history of sarcoidosis, we continue[] to await manifestations of this.  The question of lupus has also been raised. . . .  [S]he suffers from a lot of profound symptoms including severe hand pain, especially relating to manipulation of objects as well as exposure to cold.  Her hands are also very weak and sometimes she has dropped things due to the weakness form the Raynaud's phenomenon.  Because of

---

[13] *See* Administrative Record at 333.

[14] *Id*. at 335.

> these severe symptoms and continued workup, although I am
> not able to label them officially as I don't believe a diagnosis
> has been completed, it seems unlikely that she will be able to
> work in the short-term or foreseeable future.

(Administrative Record at 328.)

In September 2008, Dr. Kettman provided Primmer and her attorney with another

letter addressing her medical condition.  In the letter, Dr. Kettman opined:

> Overall, her disability complaints have not changed.  She
> continues to have fatigue.  She has multiple myalgias, hand
> numbness and pain, and this is not new.  Her depression has
> also been a struggle but seems to be doing a little better on
> medications.  She continues to be unable to work. . . .
> Workup has not revealed any further revelation to what this
> is. . . . Thus far, it has remained beyond explanation in terms
> of pinning it to a definite diagnosis such as lupus or
> rheumatoid arthritis, etc.  We are treating for depression.

(Administrative Record at 467.)

## VI.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Primmer is not disabled.  In making this determination,

the ALJ was required to complete the five-step sequential test provided in the social

security regulations.  *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010);

*Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The five steps an ALJ must

consider are:

> (1) whether the claimant is currently engaged in any substantial
> gainful activity;  (2) whether the claimant has a severe
> impairment;  (3) whether the impairment meets or equals an
> impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1
> ("Appendix");  (4) whether the claimant can return to [his or]
> her past relevant work; and (5) whether the claimant can adjust
> to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Primmer had not engaged in substantial gainful activity since September 30, 2005. At the second step, the ALJ concluded from the medical evidence that Primmer had the following severe impairments: fibromyalgia, Raynaud's syndrome/phenomenon, mild carpal tunnel syndrome, depression, migraine headaches, and a remote history of sarcoidosis. At the

third step, the ALJ found that Primmer did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Primmer's RFC as follows:

> [Primmer] has the residual functional capacity to perform light work . . . such that she could lift 20 pounds occasionally and 10 pounds frequently; sit up to 2 hours at a time for a total of 6 hours in an 8-hour workday; stand fur up to 2 hours at a time for a total of 6 hours in an 8-hour workday and walk 3-4 blocks. She could use the hands for frequent, up to 2/3 of the day, fine fingering. [Primmer] could only occasionally climb ramps or stairs, only occasionally balance, stoop, kneel, crouch, crawl or bend. The work would be of a low stress level quantified on a scale of 1 to 10 at a 4 with 10 being the most stressful and 1 being the least stressful. In addition, [Primmer] would be limited to simple and routine tasks with no contact with the general public and limited contact with fellow workers. She would need to avoid concentrated exposures to extremes of cold, heat, wetness and humidity and no work at heights.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Primmer could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Primmer could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Primmer was not disabled.

### B.  Objections Raised By Claimant

Primmer argues that the ALJ erred in two respects. First, Primmer argues that the ALJ failed to properly consider the opinions of her treating doctor, Dr. Kettman. Second, Primmer argues that the ALJ failed to properly evaluate her subjective allegations of disability.

### 1.   Dr. Kettman's Opinions

Primmer argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Kettman. Specifically, Primmer argues that the ALJ's reasons for

discounting Dr. Kettman's opinions are not supported by substantial evidence in the record. Primmer concludes that if Dr. Kettman's opinions were properly evaluated and weighed by the ALJ, then she would have been found to be disabled. Primmer asks that this matter be remanded to the ALJ for a proper evaluation of Dr. Kettman's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Kettman as follows:

> As for the opinion evidence, the undersigned has considered the opinion of primary care physician, Dr. Kettman; however, the severity of the limitations has not been supported by physical examination and based on the claimant's reported limitations.

(Administrative Record at 24.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has failed to meet these requirements. The ALJ's suggestion that Dr. Kettman's opinions are not reliable because he did not examine her is simply wrong. Even a cursory review of the record demonstrates that Dr. Kettman's opinions are based on multiple meetings and examinations of Primmer over a period of approximately four years.[15]   Therefore, the

---

[15] *See* Administrative record at 181-200; 269-278; 328; 349-359; 438-445; 448-460; 467; 469-472.

Court concludes that the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Kettman, Primmer's treating doctor. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). Accordingly, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Kettman's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Kettman's opinions and support his reasons with evidence from the record.

### 2. *Credibility Determination*

Primmer argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Primmer maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Primmer's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

24

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> To the extent that [Primmer] has been diagnosed and treated for disorders which produce chronic pain as well as fatigue, the undersigned finds [Primmer] credible. However, assertions of weakness have not been supported by repeated physical examinations. In addition, she has reported a positive

> response with treatment with regard to depression, sleep, and pain control. It has been additionally noted that regular daily exercise has proven beneficial for symptoms control. And, despite reports of leg pain and knee pain, [Primmer] continued to walk for 1-2 miles or up to 12-13 blocks at least once or twice a day. Further the allegations of migraine headaches have been inconsistent across sources throughout the relevant period. For the aforementioned reasons, the undersigned finds [Primmer] less than fully credible.

(Administrative Record at 24.)

It is clear that the ALJ considered the *Polaski* factors and medical records in making his credibility determination. What is less clear, and somewhat troubling to the Court, is whether the ALJ considered the entire record in addressing the *Polaski* factors and Primmer's medical records. A review of the record demonstrates that Primmer has had many peaks and valleys in her treatment of depression, sleeping problems, and pain control. While it is true that her symptoms have improved at times with medication and exercise, it is also true that her symptoms have declined while using medication and exercise. The Court also has difficulty understanding the ALJ's finding that "assertions of weakness have not been supported by repeated physical examinations" because there is evidence in the record that would likely support a finding of weakness, and evidence that would not support a finding of weakness. Similarly, it is not clear to the Court where in the record there are inconsistencies with regard to Primmer's allegations of migraine headaches. In other words, the ALJ's generic and undetailed list of reasons for finding Primmer "less than fully credible," lacks the requisite detail for an informed review by this Court. Therefore, the Court finds that the ALJ failed to set forth the requisite detailed reasons for discrediting Primmer's testimony, and fully explain the inconsistencies in the record. *See Ford*, 518 F.3d at 982 (providing that an ALJ must "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'") (quotation omitted); *Baker*, 159 F.3d at 1144 ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the

testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Accordingly, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Primmer's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Primmer's subjective allegations to be credible or not credible. If on remand, the ALJ finds Primmer's testimony not to be credible, the ALJ is required to fully explain *in detail*, the reasons for his credibility determination and fully explain *in detail*, the inconsistencies between Primmer's subjective allegations and the evidence in the record.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record

with regard to the opinions of Dr. Kettman; and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

### VII. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Kettman's opinions and support his reasons with evidence from the record. The ALJ must also consider all of the evidence relating to Primmer's subjective allegations of pain and disability, and address his reasons in detail, for crediting or discrediting those allegations, when determining Primmer's credibility.

### VIII. ORDER

For the foregoing reasons, it is hereby **ORDERED** as follows:

1.  The Motion to Remand for New and Additional Evidence (docket number 16) pursuant to sentence six of 42 U.S.C. § 405(g), filed by Primmer on October 26, 2011, is **DENIED**.

2.  This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 31st day of January, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA